UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JILL MARIE-KAPPUS SCHMID,<br><br>                    Plaintiff,<br><br>      v.<br><br>DEPARTMENT OF THE ARMY, U.S.<br>ARMY CORPS OF ENGINEERS,<br>JOHN M. McHUGH, as Secretary of the<br>Army, ROBERT L. VAN ANTWERP,<br>as Commanding General and Chief of<br>the U.S. Army Corps of Engineers,<br><br>                    Defendants. | NO:  CV-11-5042-RMP<br><br>ORDER GRANTING<br>DEFENDANTS' MOTIONS TO<br>DISMISS AND FOR SUMMARY<br>JUDGMENT |

BEFORE the Court are the Defendants' motions to dismiss and for summary

judgment, ECF Nos. 56, 64.  The Court has reviewed the motions, memoranda,

statements of material facts, the declarations, attachments to documents, the

amended complaint, all other relevant filings, and is fully informed.  The Court has

had the benefit of oral argument on these motions.

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS AND FOR
SUMMARY JUDGMENT ~ 1

1

**BACKGROUND**

2        Plaintiff Jill Marie-Kappus Schmid is an attorney formerly employed by

3   Defendant United States Army Corps of Engineers ("Corps").  ECF No. 120 at 3-5.

4   Ms. Schmid was hired by the Corps in 2006 as Assistant District Counsel in the

5   Corps' Walla Walla District Office.  ECF No. 120 at 4-5.  Part of Ms. Schmid's

6   role as Assistant District Counsel was to provide legal analysis on environmental

7   assessments and compliance obligations.  ECF No. 120 at 6.  In performing her

8   job, Ms. Schmid worked alongside Benjamin Tice.  Mr. Tice is a biologist who

9   began working for the Corps in 1995.  ECF No. 120 at 9.

10        The record evidences no problematic events between Mr. Tice and Ms.

11  Schmid until 2009.  On June 24, 2009, Mr. Tice sent an email to Lt. Col. Michael

12  Farrel, Commander of the Corps' Walla Walla District.  ECF No. 120 at 15.  Mr.

13  Tice carbon copied other parties on the email, including Ms. Schmid.  ECF No.

14  120 at 15.  The email was so out of character for Mr. Tice, that Mr. Tice's co-

15  workers were concerned for him.  ECF No. 120 at 16.  For example, in the email,

16  Mr. Tice urges the readers of the email to "Read MY suicide training document.

17  Come see MY hands!" and expresses his desire to "explain this to my Angels.  I

18  have a list.  It doesn't contain all of them, just enough to let me be understood."

19  ECF No. 67 at 223.  In the email, Mr. Tice describes Ms. Schmid as his "most

20

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS AND FOR
SUMMARY JUDGMENT ~ 2

1  special Angel right now.  I so PRAY she is safe.  She has to be CRAZY.  I MUST

2  be CRAZY!"  ECF No. 67 at 223.

3        As a result of the email, Mr. Tice was asked to leave the Walla Walla office,

4  and a decision was made to keep him away from the office until he was medically

5  cleared.  ECF No. 120 at 19-21.  Mr. Tice visited St. Mary's Medical Center in

6  Walla Walla, Washington, where he was diagnosed with bi-polar disorder.  ECF

7  No. 120 at 19.  However, two days later, and while still in a heightened mental

8  state, Mr. Tice returned to his workplace, seeking to find out why he had been

9  asked to leave on June 24.  ECF No. 120 at 20.  Deputy Director Alan Feistner and

10  Security Officer Dave Raappana spoke with Mr. Tice and explained that he needed

11  to be medically evaluated before he could return to work.  ECF No. 120 at 22.

12        Mr. Tice remained outside his workplace for some time after his

13  conversation with Mr. Feistner and Mr. Raappana.  During that time Ms. Schmid

14  and other employees went out to speak with Mr. Tice.  ECF No. 120 at 23-25.  Mr.

15  Feistner eventually returned with a formal letter advising Mr. Tice of the need to

16  be medically cleared before returning to work.  ECF No. 120 at 25.  Additionally,

17  police were summoned after it became clear that Mr. Tice would not leave.  ECF

18  No. 144 at 45.  After speaking with the police, Mr. Tice was escorted away from

19  his work and driven home by two of his co-workers.  ECF No. 144 at 45.

20

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS AND FOR
SUMMARY JUDGMENT ~ 3

1    On June 29, 2009, Mr. Tice voluntarily entered the Lourdes Counseling

2    Center ("Lourdes") in Kennewick, Washington.  ECF No. 120 at 26.  He remained

3    for in-patient treatment at Lourdes for one week.  ECF No. 120 at 26.  Dr. R. A.

4    Johnson, M.D., a psychiatrist at Lourdes, diagnosed Mr. Tice with bi-polar

5    disorder.  ECF No. 120 at 26.  Dr. Johnson released Mr. Tice to return to work on

6    July 22, 2009.  ECF No. 120 at 26.

7    Mr. Tice returned to work on July 22, 2009.  ECF No. 120 at 27.  After Mr.

8    Tice returned, he continued to call Ms. Schmid, send her emails, pass notes, and

9    make personal visits to Ms. Schmid's work area.  ECF No. 120 at 28.  In early

10   August, Ms. Schmid went to her supervisor, Linda Kirts.  ECF No 120 at 28.  Ms.

11   Schmid "expressed to [Kirts] her concerns with things [concerning Tice]," and told

12   Ms. Kirts that "she was uncomfortable, that [Tice] was communicating with her in

13   ways that she didn't want and she wanted it to stop."  ECF No. 120 at 28

14   (alteration in original) (internal quotations omitted).

15   In early August 2009, Mr. Tice ran out of one of his medications.  ECF No.

16   120 at 30.  A report from Lourdes, signed on September 4, 2009, suggests that Mr.

17   Tice's behavior began to deteriorate by August 11, 2009.  ECF No. 67-1 at 289-

18   294.  By August 15, 2009, Mr. Tice's wife noticed that Mr. Tice had run out of his

19   medication.  ECF No. 120 at 32-33.  On August 17, 2009, Mr. Tice's wife called

20   Dr. Johnson and received a new prescription with instructions that Mr. Tice should

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS AND FOR
SUMMARY JUDGMENT ~ 4

immediately take a double dose.  ECF No. 120 at 32-33.  Mr. Tice only took a single dose of his medication.  ECF No. 120 at 33.

During the week of August 17, 2009, Mr. Tice's co-workers reported to Mr. Tice's supervisor that his behavior had changed.  ECF No. 120 at 31-32.  On August 18, 2009, Mr. Tice gave Ms. Schmid a letter containing a riddle and a prediction related to a shoreline management project they were working on together.  ECF No. 67 at 270-273.   Mr. Tice exhibited further odd behavior over the course of August 19, 2009, culminating in a conversation with his supervisor.  ECF No. 120 at 34.  Mr. Tice's supervisor then spoke with human resources about monitoring Mr. Tice.  ECF No. 120 at 35.  Mr. Tice's supervisor also called Mr. Tice's wife to request that she set up a meeting for Mr. Tice with Dr. Johnson that evening, which Mr. Tice did not attend.  ECF No. 120 at 36.

Mr. Tice left work on August 19, 2009, at 3:00 p.m.  ECF No. 120 at 37.  Later that evening, Mr. Tice traveled to his stepdaughter's home.  ECF No. 120 at 37.  While there, Mr. Tice was incoherent and rambling and reported that voices were telling him that someone had to die.  ECF No. 120 at 37.  Mr. Tice suggested that maybe he should commit suicide and suggested at various times killing his wife, family members, and neighbor.  ECF No. 120 at 39-40.  Mr. Tice also expressed an interest in killing Ms. Schmid.  ECF No. 120 at 38-40.

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS AND FOR SUMMARY JUDGMENT ~ 5

Mr. Tice also stated that he loved Ms. Schmid, and that Ms. Schmid needed to go with him to God.  ECF No. 120 at 39.  A note was found in Mr. Tice's vehicle which stated that he wanted himself and Ms. Schmid to die nine days apart.  ECF No. 120 at 38, 41.  The vehicle also contained ammunition for a firearm.  ECF No. 120 at 38.  Walla Walla Police took Mr. Tice into custody on a mental health concern.  ECF No. 120 at 40-41.  Ms. Schmid was aware of the death threat.  ECF No. 120 at 41-42.

Mr. Tice was involuntarily committed to Lourdes on August 20, 2009.  Ms. Schmid applied for and received an ex parte temporary restraining order restricting Mr. Tice from coming within 500 feet of her.  ECF No. 120 at 48.  Ms. Schmid and her husband left the Walla Walla area for the weekend, and Ms. Schmid was given administrative leave for the following week.  ECF No. 120 at 52.  On August 27, 2009, Mr. Tice mailed a letter to a co-worker for delivery to Ms. Schmid.  ECF No. 120 at 48.  That co-worker turned the letter over to Corps' security officers, who provided the letter to Commander Ferrell.  ECF No. 120 at 53.  At Plaintiff's insistence, Commander Ferrell turned the letter over to her.  ECF No. 120 at 55.

Mr. Feistner sent an email to all staff directing them to use their badges to enter the building and only enter through the front door.  ECF No. 120 at 55-56.  Other security precautions were taken to ensure building security should Mr. Tice appear.  ECF No. 120 at 57-58.

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS AND FOR SUMMARY JUDGMENT ~ 6

1    On September 1, 2009, Mr. Tice was released from his commitment after a

2    review hearing.  ECF No. 120 at 58.  Prior to his release, Mr. Tice's medical

3    providers found that Mr. Tice was no longer acutely manic and no longer had

4    suicidal or homicidal ideation.  ECF No. 120 at 60.

5    Even though Mr. Tice was released, the reviewing court found that Mr. Tice

6    presented a likelihood of serious harm to himself and others.  ECF No. 120 at 59.

7    The court ordered that Mr. Tice continue to take his medications, attend outpatient

8    mental health appointments, refrain from threatening or harming others, and refrain

9    from drugs and alcohol.  ECF No. 120 at 59.  In addition, Mr. Tice's medical

10    providers noted a risk of relapse.  ECF No. 120 at 60.

11    On September 4, 2009, Mr. Tice attended a court hearing in which Ms.

12    Schmid sought an anti-harassment order.  ECF No. 120 at 60-61.  The court

13    entered a two-year order restraining Mr. Tice from coming within 500 feet of Ms.

14    Schmid's home or contacting Ms. Schmid.  ECF No. 120 at 60.  However, Mr.

15    Tice was only restricted from coming within twenty feet of Ms. Schmid at his and

16    Ms. Schmid's shared workplace.  ECF No. 120 at 60-61. When the anti-harassment

17    order was entered, Mr. Tice was still on administrative and medical leave.  ECF

18    No. 120 at 62.

19    On September 17, 2009, Commander Farrell ordered that an Army

20    Regulation ("AR") 15-6 investigation be conducted to investigate the threats made

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS AND FOR
SUMMARY JUDGMENT ~ 7

by Mr. Tice against Ms. Schmid.  ECF No. 120 at 64.  The purpose of the

investigation was to determine what disciplinary or corrective action needed to be

taken.  ECF No. 120 at 65-66.  The AR 15-6 investigation concluded that Mr. Tice

did not have an intent to kill anyone on the night of August 19, 2009.  ECF No. 67

at 44.

On September 18, 2009, the Corps granted Ms. Schmid a telework

agreement that was initially slated to end October 23, 2009, but was extended until

January 11, 2010.  ECF No. 120 at 72-73.  Ms. Schmid worked remotely from a

home in Arizona that she shared with her cousin.  ECF No. 120 at 72-73.

On October 26, 2009, Dr. Johnson cleared Mr. Tice to return to work.  ECF

No. 120 at 73.  However, Dr. Johnson also informed Commander Farrell that Mr.

Tice could possibly relapse.  ECF No. 120 at 74.  The Corps approved Mr. Tice's

return to work on November 23, 2009.  ECF No. 120 at 74-75.  The Corps placed

Mr. Tice at an annex that was five miles away from the main building.  ECF No.

120 at 74-75.

Commander Farrell also imposed a two-week suspension on Mr. Tice,

issued on January 5, 2010.  ECF No. 120 at 79-80.  Mr. Tice served his suspension

from January 24, 2010, to February 6, 2010.   Mr. Tice returned to the main Walla

Walla building on February 9, 2010.  ECF No. 120 at 82, 84-85.  The Corps tried

to accommodate Mr. Tice's compliance with Ms. Schmid's anti-harassment order

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS AND FOR
SUMMARY JUDGMENT ~ 8

by limiting Mr. Tice's parking and entry options into the building and by taking other steps to avoid having Mr. Tice and Ms. Schmid come into direct contact. ECF No. 120 at 83.

As a result of Mr. Tice's presence in Walla Walla, Ms. Schmid could not go to the offices of some of her co-workers who served on development teams with her because Mr. Tice's office was near theirs.  ECF No. 120 at 85.  Ms. Schmid asserts that she was not invited to meetings because Mr. Tice would be present. ECF No. 120 at 86.  Ms. Schmid identified meeting exclusions as beginning in January 2010.  ECF No. 121 at 19-20.  In addition, Mr. Tice's presence in the building caused Ms. Schmid emotional distress that was apparent to her coworkers. ECF No. 120 at 87.

On February 16, 2010, Ms. Schmid filed a complaint with an Equal Employment Opportunity ("EEO") counselor.  ECF No. 121 at 343.  In the EEO complaint, Ms. Schmid alleged gender discrimination based on the return of Mr. Tice.  ECF No. 121 at 344.  The EEO complaint states that Ms. Schmid "seeks at a minimum transfer to another district and costs associated with moving to include sale of house [sic], and Permanent Change of Station (PCS) to resolve the issue." ECF No. 121 at 344.

In March of 2010, Ms. Schmid requested a transfer to a different Corps office from her supervisors.  ECF No. 120 at 88-89.  Ms. Schmid was transferred

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS AND FOR SUMMARY JUDGMENT ~ 9

to the Portland Oregon District on April 12, 2010.  ECF No. 120 at 88-89.  Upon first arriving in Portland, Ms. Schmid alleges that she was berated by a Lieutenant Colonel who repeatedly asked why she had moved from the Walla Walla Department.  ECF No. 120 at 89.  That same Lieutenant Colonel revealed later that same day that he knew why she had sought a transfer.  ECF No. 120 at 89.  Ms. Schmid alleges that she was treated "differently" at the Portland Department because everyone there knew what had happened in Walla Walla.  ECF No. 120 at 89.  While in Portland, Ms. Schmid was even asked to negotiate the rental of an inflatable play area for a Corps social event.  ECF No. 69 at 689.  Ms. Schmid resigned from the Corps on July 28, 2010.  ECF No. 120 at 92-93.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A key purpose of summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  Summary judgment is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Celotex*, 477 U.S. at 327.

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS AND FOR SUMMARY JUDGMENT ~ 10

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323. The moving party must demonstrate to the Court that there is an absence of evidence to support the non-moving party's case. *See Celotex Corp.*, 477 U.S. at 325. The burden then shifts to the non-moving party to "set out 'specific facts showing a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).

A genuine issue of material fact exists if sufficient evidence supports the claimed factual dispute, requiring "a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987). At summary judgment, the court draws all reasonable inferences in favor of the nonmoving party. *Dzung Chu v. Oracle Corp.* (*In re Oracle Corp. Secs. Litig.*), 627 F.3d 376, 387 (9th Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). The evidence presented by both the moving and non-moving parties must be admissible. Fed. R. Civ. P. 56(e). The court will not presume missing facts, and non-specific facts in affidavits are not sufficient to support or undermine a claim. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

## DISCUSSION

In her first amended complaint, ECF No. 18, Ms. Schmid alleges four causes of action under Title VII and three causes of action through the Federal Tort

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS AND FOR SUMMARY JUDGMENT ~ 11

1  Claims Act ("FTCA").  Under Title VII, Ms. Schmid alleges actions for (1)

2  constructive discharge; (2) disparate treatment; (3) retaliation; and (4) sexual

3  harassment / hostile work environment.  Under the FTCA, Ms. Schmid alleges

4  actions for (1) negligent supervision and retention; (2) negligent infliction of

5  emotional distress; and (3) intentional infliction of emotional distress.

6  **Claims Under Title VII**

7       The proper legal framework for considering a grant of summary judgment

8  on a Title VII claim is established in *McDonnell Douglas Corp. v. Green*, 411 U.S.

9  792 (1973).  *Viliarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1062 (9th Cir.

10 2002).  Under that framework, the plaintiff must first establish a prima facie case

11 of discrimination.  *Id.* (citing *McDonnell Douglas*, 411 U.S. at 802).  The level of

12 proof required to meet this standard "'is minimal and does not even need to rise to

13 the level of a preponderance of the evidence.'"  *Id.* (quoting *Wallis v. J.R. Simplot*

14 *Co.*, 26 F.3d 885, 889 (9th Cir. 1994)).

15      Where a plaintiff establishes a prima facie showing of discrimination, the

16 defendant has the burden of production "to articulate some legitimate,

17 nondiscriminatory reason for the challenged action."  *Id.* (citing *McDonnell*

18 *Douglas*, 411 U.S. at 802).  Where an employer provides a nondiscriminatory

19 reason, the plaintiff must show that the reason is pretextual "'either directly by

20 persuading the court that a discriminatory reason more likely motivated the

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS AND FOR
SUMMARY JUDGMENT ~ 12

employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" *Id.* (quoting *Chuang v. Univ. of Cal. Davis*, 225 F.3d 1155, 1123 (9th Cir. 2000)). "Although a plaintiff may rely on circumstantial evidence to show pretext, such evidence must be both specific and substantial." *Id.* (citing *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1222 (9th Cir. 1998)).

### Proper Party

As an initial matter, Defendants argue that the Department of the Army, the Army Corps of Engineers, and Robert L. Van Antwerp must be dismissed from this action because the proper defendant in a Title VII is the head of the department, agency, or unit that employed the plaintiff. 42 U.S.C. § 2000e-16(c). Defendants agree that John M. McHugh, as Secretary of the Army, is a proper Title VII defendant. Ms. Schmid argues that both Mr. McHugh and Mr. Antwerp, as Commanding General in Chief of the Corps, are proper under Title VII. However, the proper defendant in a Title VII suit against the Corps is the Secretary of the Army. *Smith v. United States Army Corps of Engineers*, 829 F. Supp. 2d 176, 183 (W.D.N.Y. 2011). Accordingly, all Title VII claims against the Corps, the Department of the Army, and Mr. Antwerp are dismissed.

### Constructive Discharge

"Constructive discharge occurs when, 'looking at the totality of the circumstances, a reasonable person in [the employee's] position would have felt

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS AND FOR SUMMARY JUDGMENT ~ 13

that he was forced to quit because of intolerable and discriminatory working

conditions.'" *Wallace v. City of San Deigo*, 479 F.3d 616, 625 (9th Cir. 2006)

(alteration in original) (internal quotations omitted) (quoting *Watson v. Nationwide*

*Ins. Co.*, 823 F.2d 360, 361 (9th Cir. 1987)).  "The determination whether

conditions were so intolerable and discriminatory as to justify a reasonable

employee's decision to resign is normally a factual question left to the trier of

fact." *Watson*, 823 F.2d at 361.  Generally, a single isolated incident is not

sufficient to establish constructive discharge, and a plaintiff must establish "some

aggravating factors, such as a continuous pattern of discriminatory treatment" to

support a claim for constructive discharge.  *Schnidrig v. Columbia Mach. Inc.*, 80

F.3d 1406, 1411-12 (9th Cir. 1996) (quoting *Sanchez v. City of Santa Ana*, 915

F.2d 424, 431 (9th Cir. 1990)).

Ms. Schmid argues that a threat of physical harm is sufficient, even as an

isolated incident, to support a finding of constructive discharge.  She asserts that

the evidence in the record creates an issue of fact as to whether such a threat

occurred here.  However, even taking her proposition as true, the relevant time

frame for determining whether working conditions have become so intolerable as

to constitute a constructive discharge is at the time of the plaintiff's resignation.

*See Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1465 (9th Cir. 1994); s*ee*

*also Torrech-Hernandez v. General Elec. Co.*, 519 F.3d 41, 50 (1st Cir. 2008).

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS AND FOR
SUMMARY JUDGMENT ~ 14

1    Ms. Schmid resigned on July 28, 2010.  Her resignation came slightly more

2    than three months from the date she transferred to the Portland office, eight months

3    after Mr. Tice had returned to work at the Walla Walla District Office, nearly a

4    year after Mr. Tice's threats, and over a year after Mr. Tice's sending of the

5    "Angels" email.  Given the long stretches of time in which Ms. Schmid tolerated

6    her working conditions, the Court finds that a reasonable fact finder could not

7    conclude that those conditions were intolerable.

8        With regard to the conditions in Portland, Ms. Schmid testified during her

9    deposition that she was berated upon first arriving in Portland by a Lieutenant

10   Colonel who asked her why she had transferred to Portland and that the same

11   Lieutenant Colonel shortly thereafter revealed to Ms. Schmid in an elevator that he

12   knew why she had transferred.  Other than the incidents with the Lieutenant

13   Colonel, the only issues Ms. Schmid had with the Portland office were that she had

14   been assigned the duty of organizing the rental of an inflatable play area for a

15   company picnic, which she felt was a menial task, and that she was uncomfortable

16   with everyone in her department knowing why she had transferred to Portland,

17   which she alleges caused them to treat her differently.  ECF No. 69 at 689.  Ms.

18   Schmid noted that although Mr. Tice had been to the Portland office before, he did

19   not travel to the Portland office during her time there.  ECF No. 69 at 688.

20

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS AND FOR
SUMMARY JUDGMENT ~ 15

1    Therefore, Ms. Schmid has failed to present any evidence of intolerable conditions

2    in the Portland office.

3           In short, Ms. Schmid has presented no aggravating factors establishing that,

4    at the time that she resigned, conditions were so intolerable that she was forced to

5    resign.  Ms. Schmid continued her employment both after Mr. Tice's bizarre and

6    threatening behavior in Walla Walla and after her initial interaction with the

7    Lieutenant Colonel in Portland.  The only negative factor that Ms. Schmid alleges

8    existed at the time that Ms. Schmid resigned was that she was treated differently by

9    her coworkers because of the nature of her transfer from Walla Walla.

10          Taking the evidence in the light most favorable to Ms. Schmid, a reasonable

11   fact finder could not find that a reasonable person in her position would have felt

12   compelled to quit.  Accordingly, Defendants are entitled to summary judgment on

13   Ms. Schmid's constructive discharge claim.

14          *Disparate Treatment*

15          To establish a prima facie case for disparate treatment under Title VII, "a

16   plaintiff must demonstrate that: (1) [she] belonged to a protected class; (2) [she]

17   was qualified for [her] job; (3) [she] was subjected to an adverse employment

18   action; and (4) similarly situated employees not in [her] protected class received

19   more favorable treatment."  *Athoine v. N. Cent. Cntys. Consortium*, 605 F.3d 740,

20   753 (9th Cir. 2010) (citing *Moran v. Selig*, 447 F.3d 748, 753 (9th Cir. 2006)).

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS AND FOR
SUMMARY JUDGMENT ~ 16

It is uncontested that Ms. Schmid, as a woman, belongs to a protected class and that she was qualified for her job. Accordingly, the only issues on summary judgment as to Ms. Schmid's disparate treatment claim are whether she was subject to an adverse employment action and whether a similarly situated employee outside of Ms. Schmid's protected class received more favorable treatment.

In the context of Title VII, employees are "similarly situated" for the purposes of *McDonnell Douglas* where "they have similar jobs and display similar conduct." *Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003) (citing *Ward v. Procter & Gamble Paper Prods. Co.*, 111 F.3d 558, 560-61 (8th Cir. 1997)). Whether an employee is similarly situated is ordinarily a question of fact. *Beck v. United Food and Commercial Workers Union, Local 99*, 506 F.3d 874, 885 n.5 (9th Cir. 2007) (citing *George v. Leavitt*, 407 F.3d 405, 414-15 (D.C. Cir. 2005)).

Ms. Schmid argues that she and Mr. Tice were similarly situated for the purposes of Title VII and that Mr. Tice, who is outside of Ms. Schmid's protected class, was treated more favorably than her. Ms. Schmid's argument focuses on the fact that Mr. Tice and Ms. Schmid both worked as a team in the environmental compliance division of the Corps. Therefore, Plaintiff argues, despite the fact that

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS AND FOR
SUMMARY JUDGMENT ~ 17

1  Mr. Tice is a biologist with a different title and pay than Ms. Schmid, an attorney,

2  the two are similarly situated.

3        However, even if the Court were to accept the premise that Ms. Schmid and

4  Mr. Tice occupied a similar position, to be similarly situated employees must also

5  engage in similar material conduct. *Vasquez*, 349 F.3d at 641.  The conduct of the

6  parties becomes particularly important where the alleged disparate treatment flows

7  as a consequence of the employees' conduct. *E.g. Ward*, 111 F.3d at 561 (holding

8  that two employees were not similarly situated because of their differing levels of

9  physical escalation of an argument).  In this case, all of Ms. Schmid's alleged

10  adversary employment actions flow from Mr. Tice's threatening behavior.

11        Ms. Schmid and Mr. Tice worked without incident from 2006 until June of

12  2009 when Mr. Tice sent the "Angels" email.  Shortly thereafter, Mr. Tice was

13  diagnosed with bi-polar disorder, and it was not very long after the diagnosis that

14  the situation deteriorated further, ultimately leading to Mr. Tice's death threats and

15  civil commitment to a mental institution.

16        After the June and August 2009 events, the Corps was well aware of Mr.

17  Tice's mental health diagnosis. Both the mental health and conduct differences

18  between Ms. Schmid and Mr. Tice were material to the decisions made by the

19  Corps.  For example, the Corps waited until a mental health professional cleared

20  Mr. Tice to return to work before the Corps allowed him back.  Similarly, the

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS AND FOR
SUMMARY JUDGMENT ~ 18

1    Corps took measures to prevent contact between Mr. Tice and Ms. Schmid, given

2    the death threats that he had made.

3         Because Mr. Tice's mental health diagnosis and conduct were relevant to the

4    Corps' decisions, and because Ms. Schmid did not engage in similar conduct or

5    possess similar mental health diagnoses, the parties were not similarly situated in a

6    way that was material to the Corps' decisions.  As a result, the different treatment

7    that Mr. Tice and Ms. Schmid received cannot give rise to an inference that the

8    discrimination was gender-based.  Ms. Schmid has provided no evidence of other

9    circumstances that give rise to an inference that any adverse employment effects

10   suffered by Ms. Schmid were based on her gender.

11        As the Court concludes that Ms. Schmid has failed to present evidence of a

12   similarly situated employee receiving more favorable treatment or of gender based

13   disparate treatment, the Court does not reach the issue of whether Ms. Schmid has

14   presented sufficient evidence to establish that she suffered an adverse employment

15   action for purposes of her disparate treatment claim.  Ms. Schmid has failed to

16   establish a prima facie case of disparate treatment based on her gender and

17   Defendants are entitled to summary judgment on that claim.

18        ***Retaliation***

19        "To make out a prima facie case of retaliation, an employee must show that

20   (1) [she] engaged in a protected activity; (2) [her] employer subjected [her] to an

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS AND FOR
SUMMARY JUDGMENT ~ 19

1    adverse employment action; and (3) a causal link exists between the protected

2    activity and the adverse action." *Ray*, 217 F.3d at 1240 (citing *Steiner v. Showboat*

3    *Operating Co.*, 25 F.3d 1459, 1464 (9th Cir. 1994)).  Both filing a complaint with

4    the Equal Employment Opportunity Commission and filing an informal complaint

5    with a supervisor can qualify as protected activities.  *Ray*, 217 F.3d at 1240 n.3.

6    For the purposes of a retaliation claim, the standard for showing an adverse

7    employment action is lower than for disparate treatment claims under Title VII.  In

8    a retaliation case, the challenged action must be "materially adverse" which means

9    the action might well have "'dissuaded a reasonable worker from making or

10    supporting a charge of discrimination.'"  *Burlington N. & Santa Fe Ry. Co.*, 548

11    U.S. 53, 68 (2006) (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir.

12    2006)).

13         The parties agree that Ms. Schmid's February 16, 2010, EEO complaint

14    qualifies as a protected activity for the purposes of Title VII.  However, Ms.

15    Schmid argues that she has a protected activity date that arises earlier than the

16    February 16, 2010, EEO complaint.  Ms. Schmid asserts that she made earlier

17    complaints to her supervisors about Mr. Tice.  ECF No. 119 at 17.  In support of

18    her claim, Ms. Schmid cites to the deposition testimony of her supervisor Linda

19    Kirts.

20

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS AND FOR
SUMMARY JUDGMENT ~ 20

1    Ms. Kirts's deposition testimony evidences that Plaintiff came to her in

2    August of 2009 after Mr. Tice's initial return to work following the "Angels" letter

3    but prior to the August 19, 2009, death threats.  Ms. Kirts testified that Ms. Schmid

4    "said that she was uncomfortable, that [Mr. Tice] was communicating with her in

5    ways that she didn't want, and she wanted it to stop."  ECF No. 121 at 79.  Ms.

6    Kirts suggested that Ms. Schmid should tell Mr. Tice to stop emailing her and

7    talking to her.  ECF No. 121 at 79.  Ms. Kirts testified that she never reviewed the

8    emails that Mr. Tice was sending to Ms. Schmid, nor was she aware of whether

9    Mr. Tice's phone calls to Ms. Schmid had become more frequent.  ECF no. 121 at

10    79-80.

11    Nowhere in Ms. Kirts's testimony does she suggest that Ms. Schmid

12    communicated that Mr. Tice's harassment or unwanted communication were

13    gender-based.  In fact, when Ms. Kirts references Mr. Tice's conduct more

14    generally she states that neither she nor Ms. Schmid believed Mr. Tice's conduct to

15    comprise sexual harassment.[1]  ECF No. 121 at 89, 91.

16    By early August, Mr. Tice had sent the "Angels" email, had appeared at

17    work without being allowed inside, and had returned to work in late July.  None of

18    the specific conduct alleged to have occurred during this time gives rise to an

19    _____

20    [1]Under Ninth Circuit case law, a hostile work environment is one form of
sexual harassment.  *Ellison v. Brady*, 924 F.2d 872, 875 (9th Cir. 1991).

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS AND FOR
SUMMARY JUDGMENT ~ 21

1  inference that gender is at issue or that Ms. Kirts or the Corps should have been on

2  notice that Ms. Schmid's August complaint was about gender discrimination.

3  While the "Angels" email refers to Ms. Schmid as Mr. Tice's "most special Angel

4  right now," the subsequent list purporting to identify possible "Angels" lists both

5  men and woman as candidates.  ECF No. 67 at 223.  It is not until after the events

6  of August 19, 2009, that the materials reference Mr. Tice's love for Ms. Schmid

7  and his dreams of marriage and children.  ECF No. 120 at 31, 39, 54.

8        Title VII prohibits retaliation for opposing discriminatory practices.  42

9  U.S.C. § 2000e-3(a).  In order for an informal complaint about co-worker conduct

10 to a supervisor can constitute a protected activity, the report must put the

11 supervisor on notice that the offending conduct constitutes unlawful

12 discrimination, such as gender discrimination.  *E.g. Jamal v. Wilshire Mgmt.*

13 *Leasing Corp.*, 320 F. Supp. 2d 1060, 1078-79 (D. Or. 2004) (holding that

14 plaintiff's failure to identify that complaints of harassment were based on race

15 meant that the complaints were not "protected activities" for the purposes of Title

16 VII).

17       The record before the Court provides insufficient evidence for a finder of

18 fact to conclude that Ms. Schmid's August 2009 complaint to Ms. Kirts put the

19 Corps on notice that Ms. Schmid was complaining about gender discrimination.

20

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS AND FOR
SUMMARY JUDGMENT ~ 22

As a result, Ms. Schmid's August 2009 complaint is not a protected activity for the purposes of Title VII.

In light of the foregoing, the earliest protected activity evidenced in the record is Ms. Schmid's February 16, 2010, EEO complaint.  Ms. Schmid argues that she suffered the following adversary employment actions: (1) failure of her employer to provide her timely information and return her calls during her time teleworking; (2) her employer's retention and placement of Mr. Tice at the Walla Walla District Office; (3) Ms. Schmid's exclusion from meetings; (4) Ms. Schmid's transfer; and (5) Ms. Schmid's leaving her employment.

The first three adversary actions alleged by Ms. Schmid occurred before her EEO complaint was made or were ongoing at the time of the complaint and cannot serve as a basis for retaliation, ECF Nos. 120 at 72-73, 74-75, 82, 84-85; 121 at 19-20.  *See Miller v. Fairchild Indus. Inc.*, 797 F.2d 727, 731 n.1 (9th Cir. 1986).  The Court already has determined that Ms. Schmid has failed to present sufficient evidence to establish constructive discharge.  Therefore, Ms. Schmid's termination was her own choice and not a retaliatory action.

The sole action that arguably could be an adverse action supporting a claim for retaliation is Ms. Schmid's transfer to Portland.  However, in her EEO complaint, Ms. Schmid actually requested a transfer, albeit with moving expenses paid, as a remedy to her allegedly discriminatory environment.  ECF No. 121 at

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS AND FOR SUMMARY JUDGMENT ~ 23

344.  Ms. Schmid also separately asked the Corps for a transfer away from the Walla Walla District Office.  As a result, no reasonable fact finder could find that the partial satisfaction of Ms. Schmid's EEO complaint or the granting of her transfer request somehow was the Corps' retaliatory action because of Ms. Schmid's complaint.

The Court finds that there has not been sufficient evidence to find that Ms. Schmid suffered an adverse action on the basis of retaliation.  In short, Ms. Schmid has failed to provide sufficient evidence to support a prima facie case of retaliation.  Accordingly, Defendants are entitled to summary judgment on this claim.

### Sexual Harassment / Hostile Work Environment

To establish a prima facie case for a hostile work environment claim, a plaintiff "must show 'that (1) she was subjected to verbal or physical conduct of a sexual nature, (2) this conduct was unwelcome, and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"  *Craig v. M & O Agencies, Inc.*, 496 F.3d 1047, 1055 (9th Cir. 2007) (quoting *Fuller v. City of Oakland*, 47 F.3d 1522, 1527 (9th Cir. 1995)).

In determining whether a hostile work environment exists, a court looks "to 'all the circumstances,' including 'the frequency of the discriminatory conduct, its severity; whether it is physically threatening or humiliating, or a mere offensive

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS AND FOR SUMMARY JUDGMENT ~ 24

1    utterance; and whether it unreasonably interferes with an employee's work

2    performance.'"  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002)

3    (quoting *Harris v. Forklift Sys.*, *Inc.*, 510 U.S. 17, 23 (1993)).  To establish

4    employer liability for a hostile work environment, a plaintiff must show either that

5    the conduct comprising the hostile work environment was committed by a

6    supervisor or that the conduct was committed by a co-worker, the employer knew

7    or should have known of the conduct, and the employer failed to take adequate

8    steps to address the conduct.  *Swinton v. Potomac Corp.*, 270 F.3d 794, 803 (9th

9    Cir. 2001).

10          As an initial matter, Defendants argue that the relevant time period to

11    consider in determining whether Plaintiff has provided sufficient evidence to

12    establish a prima facie case for a hostile work environment claim is from January

13    1, 2010, until the end of Ms. Schmid's employment.  Defendants' argument relies

14    on the fact that before a plaintiff may bring a Title VII claim, the plaintiff must

15    exhaust her administrative remedies.  *Kraus v. Presidio Trust Facilities*

16    *Div./Residential Mgmt. Branch*, 572 F.3d 1039, 1043 (9th Cir. 2009) (citing *Brown*

17    *v. Gen. Servs. Admin*, 425 U.S. 820, 829-30 (1976)).

18          Federal employees are required to bring their claims before an EEO

19    Counselor "within 45 days of the date of the matter alleged to be discriminatory."

20    *Id.* (quoting 29 C.F.R. § 1614.105(a).  Although the time limit is contained within

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS AND FOR
SUMMARY JUDGMENT ~ 25

1    a regulation, "failure to comply with this regulation has been held to be fatal to a

2    federal employee's discrimination claim."  *Lyons v. England*, 307 F.3d 1092, 1105

3    (9th Cir. 2002).  Where the acts supporting discrimination claims are discrete,

4    application of Title VII's time limit is simple:  a party must consult with their EEO

5    counselor within the forty-five days from the date of the discrete event or lose the

6    ability to recover under Title VII.  *Cherosky v. Henderson*, 330 F.3d 1243, 1245-46

7    (9th Cir. 2003).  However, hostile work environment claims are not discrete.

8    *Morgan*, 536 U.S. at 115.

9          In *Morgan*, the Supreme Court directly addressed the timeliness of a Title

10   VII hostile work environment claim.  The Court reasoned that hostile environment

11   claims by "[t]heir very nature involve[] repeated conduct," and that such claims

12   may rely on events comprising the claim that fall outside the Title VII time period.

13   *Morgan*, 536 U.S. at 117.  However, hostile work environment claims are not

14   exempt from the administrative exhaustion requirement, and at least one act giving

15   rise to the claim must occur within the relevant filing period.  *Id.*

16         Ms. Schmid filed her EEO complaint on February 16, 2010.  That means the

17   relevant time period to establish conduct comprising her hostile work environment

18   claim began 45 days prior to February 16, 2010, which is January 1, 2010.

19   Accordingly, one act giving rise to her hostile work environment claim must have

20   occurred sometime after January 1, 2010.  The "Angels" letter, death threats,

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS AND FOR
SUMMARY JUDGMENT ~ 26

1    incessant contact, letters, and other contact between Mr. Tice and Ms. Schmid that

2    are alleged to support the Plaintiff's hostile work environment claim all occurred

3    prior to January 1, 2010.

4          There is no allegation in the complaint, nor evidence in the record,

5    supporting the occurrence of unwelcome verbal or physical conduct of a sexual

6    nature that occurred on or after January 1, 2010.  Accordingly, Ms. Schmid did not

7    file her EEO complaint in a timely fashion as required by the administrative

8    requirements, has not exhausted her administrative remedies, and cannot now

9    pursue her Title VII claim for a hostile work environment. The claim must be

10   dismissed.

11   **Federal Tort Claims Act**

12         Plaintiff alleges three tort claims against Defendants: (1) negligent

13   supervision and retention; (2) negligent infliction of emotional distress; and (3)

14   intentional infliction of emotional distress.  Defendants argue that these claims

15   must be dismissed because this Court lacks jurisdiction to hear them.

16         "The FTCA waives sovereign immunity for claims against the federal

17   government arising from torts committed by federal employees." *Foster v. United*

18   *States*, 522 F.3d 1071, 1074 (9th Cir. 2008) (citing 28 U.S.C. § 1346(b)(1)).

19   However, claims under the FTCA are limited to those against the United States as

20   a party.  *Allen v. Veterans Admin.*, 749 F.2d 1386, 1388 (9th Cir. 1984).

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS AND FOR
SUMMARY JUDGMENT ~ 27

1    "Individual agencies of the United States may not be sued."  *Id.* (citing *Evans v.*

2    *United States Veterans Admin. Hosp.*, 391 F.2d 261, 262 (2d Cir. 1968) (per

3    curiam)).

4         Defendants argue that they must be dismissed from this action because the

5    only proper defendant to Plaintiff's FTCA claims is the United States.  In *Kennedy*

6    *v. United States Postal Service*, 145 F.3d 1077 (9th Cir. 1998) (per curiam), the

7    plaintiff sued the United States Postal Service and her supervisor in his official

8    capacity alleging employment-related torts under the FTCA.  The district court

9    dismissed her claims because the FTCA does not allow suits against parties other

10   than the United States.  *Id.* at 1078.  The Ninth Circuit affirmed that dismissal and

11   stated unequivocally that "[b]ecause the plaintiff brought an FTCA action against a

12   person and entity not subject to the FTCA, the district court properly dismissed the

13   named defendants."  *Id.*  Accordingly, the Court must dismiss the FTCA claims

14   against the named Defendants for lack of jurisdiction.

15        Plaintiff argues that where the Attorney General of the United States was

16   properly served, as is uncontested in the record here, ECF No. 2, the Court should

17   substitute the United States as a defendant.  Plaintiff relies on *Doe v. Hagee*, 473 F.

18   Supp. 2d 989 (N.D. Cal. 2007), in support of her argument.  The court in *Doe* did

19   substitute the United States as a defendant in an FTCA case.  *Id.*  However, this

20   Court does not need to determine whether substitution is the appropriate course of

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS AND FOR
SUMMARY JUDGMENT ~ 28

action because the Court ultimately concludes that Ms. Schmid's claims fall within the so-called "discretionary function exception" to the FTCA's waiver of sovereign immunity. As a result, even with substitution this Court would lack jurisdiction, and such substitution would therefore be futile.

The waiver of sovereign immunity contained in the FTCA is limited by exceptions contained in 28 U.S.C. § 2680. Section 2680(a) establishes the "discretionary function exemption," which removes from the scope of the Government's waiver of sovereign immunity "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a).

The purpose of the discretionary function exception is to prevent the second-guessing of agency decisions grounded in policy. *O'Toole v. United States*, 295 F.3d 1029, 1033 (9th Cir. 2002) (quoting *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 814 (1984)). "In other words, 'if judicial review would encroach upon th[e] type of balancing done by an agency, then the [discretionary function] exception' applies." *Id.* (alteration in original) (quoting *Begay v. United States*, 768 F.2d 1059, 1064 (9th Cir. 1985)).

A two-step process controls whether the discretionary function exception applies. "First, the court must determine whether the challenged conduct involves

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS AND FOR SUMMARY JUDGMENT ~ 29

an element of judgment or choice." *Nurse v. United States*, 226 F.3d 996, 1001 (9th Cir. 2000) (citing *Berkovitz v. United States*, 486 U.S. 531, 536 (1988)). "Second, if the conduct involves some element of choice, the court must determine whether the conduct implements social, economic or political policy considerations." *Id.* (citing *Gasho v. United States*, 39 F.3d 1420, 1435 (9th Cir. 1994)). While the burden is on Plaintiff to establish the existence of subject matter jurisdiction, once Plaintiff has facially pleaded claims that fall outside the exceptions of § 2680, it is up to the Government to show that one of the exceptions applies. *Prescott v. United States*, 973 F.2d 696, 701-02 (9th Cir. 1992).

Plaintiff's first amended complaint contains no allegations that any statute, regulation, or Corps policy commanded that Mr. Tice's employment be terminated as a result of his behavior. Similarly, the record is devoid of any such statutes, regulations, or policies. Indeed, the record instead reveals many instances where no formal policy guides the decision. *E.g.* ECF No. 120 at 21 ("[A]t the time [of Mr. Tice's June 26, 2009, return to the Walla Walla District Office] there was no policy or procedure in place to deal with workplace violence."). In light of the fact that no statute or regulation restricts Corps decision making, the Corps' determination of how to handle Mr. Tice's behavior involves an element of judgment or choice. *See Doe v. Holy See*, 557 F.3d 1066, 1084 (9th Cir. 2009). Therefore, the first step of the two-step process is met.

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS AND FOR SUMMARY JUDGMENT ~ 30

As to the second step, the Ninth Circuit has noted that "the decision of whether and how to retain and supervise an employee, as well as whether to warn about his dangerous proclivities, are the type of discretionary judgments that the exclusion[2] was designed to protect." *Id.*; *see also Nurse v. United States*, 226 F.3d 996, 1001-02 (9th Cir. 2000). As Ms. Schmid's negligence claims all stem from the Corps' supervision and retention of Mr. Tice, a simple application of the discretionary function exception would bar her claims.

Ms. Schmid argues that the application of the discretionary function exception to negligent supervision and retention claims is not so mechanical. Relying on the Eighth Circuit's opinion in *Tonelli v. United States*, 60 F.3d 492 (8th Cir. 1995), which the Ninth Circuit cited with approval in *Nurse*, 226 F.3d at 1001-02, Ms. Schmid argues that the discretionary function exception applies only where large scale public policy issues are in play, i.e., where more than one

---

[2]While *Holy See* addresses the discretionary function exclusion contained in the Foreign Sovereign Immunities Act ("FSIA"), the court noted that "[t]he language of the discretionary function exclusion closely parallels the language of a similar exclusion in the Federal Tort Claims Act," and that the court would "look to case law on the FTCA when interpreting the FSIA's discretionary function exclusion." *Id.* at 1083.

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS AND FOR SUMMARY JUDGMENT ~ 31

1   person's employment is at issue.  However, Ms. Schmid's argument is belied by

2   *Tonelli* itself.

3          *Tonelli* involved a lawsuit against the United States by renters of a Post

4   Office Box who discovered that their mail was being opened and resealed.  60 F.3d

5   at 494.  Although the plaintiffs reported the malfeasance, they were unable to

6   immediately meet with the postmaster, and no immediate remedial action was

7   taken.  *Id.*  After trying to meet with the postmaster twice, the plaintiffs ceased

8   their complaints until approximately six months later.  *Id.*  The second round of

9   complaints led to an investigation and, ultimately, a postal employee allegedly

10  responsible for opening and taking some of the plaintiffs' mail resigned in lieu of

11  termination.  *Id.* The plaintiffs sued and alleged, among other things, claims for

12  negligent hiring and negligent supervision and retention.  *Id.*  The trial court

13  granted summary judgment for the United States on all claims.  *Id.*  The appellate

14  court affirmed the dismissal of the negligent hiring claim based on the

15  discretionary function exception but reversed the district court's dismissal of the

16  supervision and retention claims.  *Id.* at 496.

17         In affirming the dismissal of the negligent hiring claim, the appellate court

18  did not rely on an overarching policy determination made by the post office as to

19  all employees.  Instead, the court noted that "[t]he post office's choice between

20  several potential employees involves the weighing of individual backgrounds,

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS AND FOR
SUMMARY JUDGMENT ~ 32

office diversity, experience, and employer intuition.  These multi-factored choices require the balancing of competing objectives, and are of the 'nature and quality that Congress intended to shield from tort liability.'"  *Id.* (quoting *Varig Airlines*, 467 U.S. at 813).  *Tonelli* is in accord with the Ninth Circuit's understanding that the discretionary function exception applies where the district court would need to engage in the same kind of policy balancing as agencies.  *O'Toole*, 295 F.3d at 1033.  In short, *Tonelli* and the Ninth Circuit draw no distinction between decisions regarding a single employee or decisions about employee policies generally.

In addition to her single-employee, multi-employee argument, Ms. Schmid attempts to analogize *Tonelli* to the present case for the proposition that employee terminations based on illegal conduct are not subject to the discretionary function exception.  As noted above, while the *Tonelli* court affirmed the district court's dismissal of the negligent hiring claim, it reversed the district court as to the supervision and retention claims.  60 F.3d at 496.  The court noted that while "supervision and retention generally involve the permissible exercise of policy judgment and fall within the discretionary function exception," the action before the court "involve[d] allegations that the post office failed to act when it had notice of illegal behavior."  *Id.*  The appellate court stated that "[f]ailure to act after notice of illegal action does not represent a choice based on plausible policy considerations."  *Id.*  Stated another way, because there was no policy that could

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS AND FOR
SUMMARY JUDGMENT ~ 33

1  plausibly support the post office's failure to respond to notice of illegal conduct,

2  the post office's inaction could not have been the result of a deliberative policy

3  choice, and court review would not encroach on appropriate agency policy

4  authority.

5      *Tonelli*'s illegal conduct rationale is limited.  The *Tonelli* court relied on the

6  fact that no response to illegal conduct had occurred at all.  *Id.*  The court did not

7  address what level of response would have been appropriate.  *See id.*  Here, the

8  Corps took a variety of responses to Mr. Tice's conduct, including barring him

9  from the premises until he received mental health treatment, investigating his

10  behavior, suspending him, and placing him at an off-site facility before ultimately

11  bringing him back to Walla Walla.  In the end, the Corps decided not to terminate

12  Mr. Tice.

13      All of those decisions involve the balancing of various policy considerations

14  including the risks of workplace violence, Ms. Schmid's safety, Mr. Tice's interest

15  in his employment, and the Corps' policies towards workers with mental illnesses.

16  In determining whether the Corps' behavior with regard to Mr. Tice constituted

17  negligent supervision and retention, the Court and a finder of fact would

18  necessarily encroach on the balancing done by the Corps.  Therefore, Ms.

19  Schmid's claim for negligent supervision and retention falls within the

20

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS AND FOR
SUMMARY JUDGMENT ~ 34

discretionary function exception to the FTCA, and this Court lacks subject matter jurisdiction over the claims.

While the allegations in Ms. Schmid's first amended complaint supporting her claims for negligent and intentional infliction of emotional distress are conclusory and do not reveal her specific factual theory of liability, it is clear from her memorandum opposing the Government's motion that the conduct comprising her emotional distress claims is of the same type as the conduct supporting her negligent supervision and retention claim. Accordingly, all of Ms. Schmid's FTCA claims are barred by the discretionary function exception. As such, substituting the United States for the improperly named defendants would be futile. Therefore, the Court dismisses Ms. Schmid's FTCA claims for lack of subject matter jurisdiction.

Accordingly, **IT IS HEREBY ORDERED:**

1. The Defendants' motions to dismiss and for summary judgment, **ECF No. 56, 64**, are **GRANTED**.

2. All of Plaintiff's Title VII claims are **DISMISSED WITH PREJUDICE**.

3. All of Plaintiff's Federal Tort Claims Act claims are **DISMISSED** for lack of jurisdiction.

4. All other pending motions are hereby **DENIED AS MOOT**.

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS AND FOR SUMMARY JUDGMENT ~ 35

1    5.  All court dates are hereby **STRICKEN**.

2    6.  **JUDGMENT** shall be entered for Defendants.

3    **IT IS SO ORDERED**.

4    The District Court Clerk is hereby directed to enter this Order, to provide

5    copies to counsel, and **CLOSE** this file.

6    **DATED** this 6th day of June 2013.

7

8                                    _s/ Rosanna Malouf Peterson_
                                     ROSANNA MALOUF PETERSON
9                                    Chief United States District Court Judge

10

11

12

13

14

15

16

17

18

19

20

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS AND FOR
SUMMARY JUDGMENT ~ 36